```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**PLAQUEMINE TOWING CORPORATION**                     **CIVIL ACTION**

**VERSUS**                                            **NO. 09-5481**

**GREAT AMERICAN INSURANCE**                          **SECTION: B(4)**
**COMPANY OF NEW YORK**

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Rec. Doc. No. 16), Plaintiff's opposition thereto (Rec. Doc. No. 22), and Defendant's reply (Rec. Doc. No. 36). For the following reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 16) is **DENIED.**

Defendant, Great American Insurance Company of New York ("Great American"), issued Plaintiff, Plaquemine Towing Corporation ("PTC"), a policy of pollution liability insurance for the period of July 31, 2008 to July 31, 2009. Rec. Doc. No. 16-1, at 1-2; Rec. Doc. No. 22-1, at 2. Great American had previously informed PTC through a quotation letter that the "[q]uote [was] subject to receipt of 5 year hard copy loss runs and GAIC [Great American Insurance Company] pollution application signed by the assured and approved by underwriters prior to binding." Rec. Doc. No. 16-1, at 2. The application, which PTC returned to Great American in September of 2008, asked the applicant to list its "Current Hull/P&I Carrier," which PTC listed as "Gulf Coast Marine Pool Co."

Rec. Doc. No. 22-1, at 2; see Rec. Doc. No. 16-14, at 2. Also included in the application was a list of the thirteen vessels owned by PTC that were to be insured by Great American, including the M/V THRIFTY NICKEL. Rec. Doc. No. 22-1, at 2. Although Gulf Coast Marine Pool Co. was PTC's "Current Hull/P&I Carrier," PTC did not have Hull or P&I insurance coverage on the M/V THRIFTY NICKEL. Rec. Doc. No. 22-1,at 2-3; Rec. Doc. No. 16-1, at 4.

On or about August 18, 2008, the M/V THRIFTY NICKEL and M/V SAMUEL CLEMENS, the latter not a scheduled vessel under the Great American policy and thus not at issue here, sank while at their moorings in the port of Sunshine, Louisiana. Rec. Doc. No. 22-1, at 3. The United States Coast Guard issued an Administrative Order on August 29, 2008, requiring placement of containment boom and ordering the immediate salvage of the vessels to prevent the discharge of any oil or chemical products that remain therein. Rec. Doc. No. 22-1, at 3; *see* Rec. Doc. No. 23-5. PTC filed a Notice of Claim with Great American, which paid in excess of $81,000.00 in pollution remediation expenses on behalf of PTC in connection with the pollution caused by the sinking of the M/V THRIFTY NICKEL. Rec. Doc. No. 16-1, at 3. However, Great American refused to pay the costs and related expenses for the salvage and refloating of the sunken vessel, and such claims form the basis of the instant lawsuit. Rec. Doc. No. 22-1, at 3; Rec. Doc. No. 16-1, at 4-5. Additionally, Great American cancelled its policy issued

2

to PTC, effective September 28, 2008, upon learning that PTC did not have Hull or P&I insurance covering the M/V THRIFTY NICKEL. Rec. Doc. No. 16-1, at 4.

Great American contends that under the clear and unambiguous language of its policy, there is no issue of material fact regarding whether the terms and conditions of its policy provide coverage to PTC for the subject claims. Rec. Doc. No. 16-1, at 5-6. Moreover, Great American argues that the costs at issue, i.e. those associated with refloating, salvaging, or wreck removal of the vessel, are to be covered by either Hull or P&I insurance, but in any event, not by a pollution liability policy. *Id.* at 10-11. Great American additionally asserts that PTC made a material misrepresentation in its insurance application that it had Hull and P&I insurance coverage over its fleet and thus the policy should be voided *ab initio*. *Id.* at 12-14.

PTC contends that it acquired the pollution liability insurance policy from Great American to cover the exact situation that occurred here, as PTC was required, by law, to salvage its vessel in order to prevent further pollution damage. Rec. Doc. No. 22-1, at 7-10. PTC argues that Great American's designation of its policy terms as "unambiguous" is questionable and far-fetched, and under the applicable rules governing contract interpretation, if there is any doubt as to the terms of the contract at issue, such should be resolved against the insurer and in favor of coverage.

*Id.* at 7-8. PTC further seeks to distinguish the precedent cited by Great American for the proposition that a pollution liability insurance policy should not be charged with covering the cost of salvaging a sunken vessel. *Id.* at 10-13. Finally, PTC maintains that as its answers on the insurance application were truthful, neither a misrepresentation nor any intent to deceive Great American existed. *Id*. at 14-17.

**A.     Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory

4

rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.   Coverage**

The pertinent provision of the pollution liability policy at issue provides as follows:

> [I]n the event of an accidental discharge or substantial threat of a discharge into the navigable waters of the United States we will indemnify you for the following ten coverages:
>
>> 7.   Firefighting and Salvage - Firefighting, salvage, offloading, and disposal of cargo, but ONLY to the extent that such actions contribute to stopping a discharge or release, OR prevent substantial threat of a discharge or release under OPA 90, CERCLA or FWPCA.

Rec. Doc. No. 16-1, at 7-8. Great American contends that pursuant to general rules of grammar and contract interpretation, the modifying phrase "of cargo" relates back to each of the terms in the list that precedes it. Rec. Doc. No. 16-1, at 9; Rec. Doc. No. 36, at 6-7. Therefore, Great American argues that there is no ambiguity that this section only provides coverage for such actions as they refer to cargo, and since PTC seeks to recover expenses for refloating the hull of the vessel, clearly no coverage under the policy exists. *Id.* PTC, however, asserts that this interpretation is unreasonable, as its vessels are the primary things needing insurance and are the actual items listed on its application to be covered by the policy, not merely cargo. Rec. Doc. No. 22-1, at 8.

5

PTC notes that the terms used in an insurance policy must be given their generally prevailing meaning, and "salvage" is defined in the Merriam-Webster Dictionary as "compensation paid for saving a ship or its cargo from the perils of the sea or for the lives and property rescued in a wreck; the act of saving or rescuing a ship or its cargo." *Id.* PTC further contends that if any doubt exists as to the terms of a contract, the contract must be interpreted against the drafter and in favor of coverage. *Id.* at 7.

The Court agrees with the parties that because the policy was delivered in Louisiana and there is no federal maritime law controlling the issue of coverage under this policy, Louisiana law applies regarding the interpretation of this marine insurance contract. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955); *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991). Pursuant to Louisiana law governing the interpretation of contracts, if the words of a policy are clear and unambiguous and do not lead to absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. *Crabtree v. State Farm Ins. Co.*, 93-0509 (La. 2/28/94), 632 So.2d 736, 741. Insurance policies should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Id.* The policy should be construed as a whole and one portion

therein should not be construed separately at the expense of disregarding another. *Id.* If after applying the general rules of construction an ambiguity exists, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. *Id.*

Great American argues that considering general grammar and contractual interpretation principles, the prepositional phrase "of cargo" clearly and unambiguously refers to each item in the preceding list. Rec. Doc. No. 16-1, at 9; Rec. Doc. No. 36, at 6-7. However, under the grammatical "doctrine of the last antecedent," relative and qualifying words, phrases, and clauses are to be read as modifying only the noun or phrase immediately preceding it, and are not to be construed as extending to or including others more remote. *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 223 (5th Cir. 2007); *Quindlen v. Prudential Ins. Co. of America*, 482 F.2d 876, 878 (5th Cir. 1973). An exception has been recognized when there is a serial list followed by modifying language that is set off from the last item in the list by a comma, which suggests that the modification applies to the whole list and not only the last item,[1] yet the provision at issue does not follow the exception.

---

[1] For example, the Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law. The comma before the phrase "without due process of law" indicates that the phrase modifies "life," "liberty," and "property." *Sobranes,* 509 F.3d at n.19.

*Sobranes*, 509 F.3d at 223. Accordingly, whether the prepositional phrase "of cargo" modifies each term in the list is not explicitly determinable by reading the language of the provision.

As set forth above, when ambiguity exists in a contractual provision, such is to be construed against the insurer and in favor of coverage for the insured. Further, interpreting the phrase at issue to favor PTC does not unreasonably enlarge coverage, as it can be reasonably contemplated that in obtaining pollution liability insurance to cover several vessels, such coverage would not be limited to only the cargo aboard those enumerated vessels.

Moreover, the most persuasive authority cited by Great American for its claim that the costs of salvaging a vessel are not to be covered by a pollution liability policy, but rather by either Hull or P&I insurance, can indeed be distinguished from the instant case, although not in the manner suggested by PTC. In *Port of Portland v. Water Quality Insurance Syndicate*, the United States Ninth Circuit Court of Appeals found that the cost of floating 65,000 gallons of fuel oil from a sunken and leaking barge should be charged to the hull & machinery underwriter, and not the pollution underwriter, because such was incurred as a necessary prerequisite to salvage and raise the vessel. *Port of Portland*, 796 F.2d 1188, 1195 (9th Cir. 1986). Therefore, the court held that such would normally be a salvage expense, even though the activity also abated a pollution threat. *Id.* Similarly, in

8

*Kearney Barge Co. v. Global Ins. Co.*, the United States District Court for the District of New Jersey held that the costs associated with the refloating of the vessel were properly charged to the hull insurer because such were in the nature of salvage, not pollution control. *Kearney*, 943 F.Supp. 441, 458 (D.N.J. 1996). There, the court specifically stated, "as in *Port of Portland*, the pollution prevention resulting from the refloating of the CYNTHIA M was incidental to the salvage of the CYNTHIA M." *Id.*

In the case at hand, however, the pollution control was not merely incidental to the raising of the vessel, but rather formed the basis for requiring the M/V THRIFTY NICKEL to be refloated or salvaged. The Administrative Order issued by the United States Coast Guard to Plaquemine Port Shipyard on August 29, 2008 demanded "immediate action to re-float or salvage the vessels...This is required to prevent the discharge of any oil or chemical products that remain in your vessels. Due to the contamination within the engines and vessel tanks and the inability to plug or patch holes within the engines or close any valves that may be leading to the discharge of oil, the vessels must be refloated to remove any further contamination theat." Rec. Doc. No. 23-5, at 3-4. Accordingly, such action falls within the language of the Great American pollution policy.

**C. Material Misrepresentation - A MUCH CLOSER ISSUE**

Great American impressively argues that it is entitled to

9

summary judgment because PTC's material misrepresentation that it had Hull and P&I Insurance on its vessels to be covered by the Great American policy renders the policy void *ab initio*. Rec. Doc. No. 16-1, at 12. "Under Louisiana law, an insurance provider can avoid a liability insurance contract if an oral or written material misrepresentation was made by or on behalf of the insured in negotiating the insurance contract, and if the material misrepresentation was made with the intent to deceive." *Pacific Ins. Co., Ltd. v. Louisiana Auto. Dealers Ass'n*, 2001 WL 1013089, *4 (5th Cir. 2001) (citing La. Rev. Stat. Ann. § 22:619). The burden of proving that the insured misrepresented a material fact and did so with the intent to deceive is with the insurer; however, in recognizing the difficulty of proving intent to deceive, Louisiana courts determine this requirement "from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his representations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Pacific Ins. Co., Ltd.*, 2001 WL 1013089, at *4-*6 (citing *Darby v. Safeco Ins. Co. of Am.*, 545 So.2d 1022, 1026 (La. 1989)). Nevertheless, summary judgment is rarely appropriate when an issue of intent is involved. *Pacific Ins. Co., Ltd.*, 2001 WL 1013089, at *4; *see also Guillory v. Domtar Indus. Inc. v. John Deere Co.*, 95 F.3d 1320, 1326 (5th Cir. 1996).

Great American notes that PTC has admitted that it did not have Hull or P&I insurance in place on the M/V THRIFTY NICKEL when it completed the application for its pollution liability insurance despite representing that it did on the application. Rec. Doc. No. 16-1, at 13.  Great American also calls into question the fact that the misrepresentation was made by PTC after consulting with its broker and after the loss in question occurred.  *Id.* at 13-14.  Great American claims that such constitutes sufficient evidence to create a reasonable assumption that the insured recognized the materiality of the misrepresentation and that it had an intent to deceive.  *Id.* at 14.

The Great American application asks the applicant to list its "Current Hull/P&I Carrier," which PTC contends it truthfully answered "Gulf Coast Marine Pool Co."  Rec. Doc. No. 22-1, at 14.  PTC additionally listed thirteen vessels to be covered under the Great American policy, including the M/V THRIFTY NICKEL.  *See* Rec. Doc. No. 16-14.  The application did not request that the applicant specify which vessels to be covered by Great American were also covered by the applicant's Hull and/or P&I carrier, nor did it state that any vessels to be covered by Great American were required to also be covered by Hull and/or P&I insurance.  Further, Great American has not offered any evidence that PTC did not in fact have Hull and/or P&I insurance issued by Gulf Coast Marine Pool Co. on any of its other vessels, whether among the twelve also

11

included under the Great American policy or any other vessel owned and operated by PTC.  Accordingly, to grant summary judgment on the basis that PTC's response constituted a material misrepresentation made with the intent to deceive would be inappropriate at this time.

**D.    Conclusion**

For the foregoing reasons, **IT IS ORDERED** that Great American's Motion for Summary Judgment (Rec. Doc. No. 16) is **DENIED.**


New Orleans, Louisiana, this 1st day of March, 2011.

UNITED STATES DISTRICT JUDGE